IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IVAN SMITH,                          )
                                     )
       Petitioner                    )
                                     )    No. 02 C 2631
       v.                            )
                                     )    The Honorable William J. Hibbler
ALAN UCHTMAN, Warden, Menard         )
       Correctional Facility.[1]     )
                                     )
       Respondent.                   )

## MEMORANDUM OPINION AND ORDER

Following a jury trial, Ivan Smith was convicted in the Circuit Court of Cook County, Illinois, of three counts of first degree murder and two counts of attempted first degree murder. The state court sentenced Smith to a term of imprisonment for the balance of his life. Smith has exhausted his state remedies and has also filed this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, raising a long list of claims for relief, most of which are procedurally defaulted. Those of Smith's claims that are not procedurally defaulted do not warrant *habeas corpus* relief and his petition is DENIED.

The events leading up to Smith's being charged with the crime for which he was convicted are set forth in the Illinois Appellate Court's decision on direct appeal, and the Court need not repeat the entire factual history here. On August 7, 1991, Rhenardo Bussle, John Coleman, and Gregory Archibald were shot and killed, and George Cruthard and Marcus Taylor were shot. Cruthard and

---

[1] Alan Uchtman is currently the Warden at the Menard Correctional Center, where Smith is incarcerated, and is thus the proper respondent in this *habeas* action. See Rule 2(a) of the Rules Governing *habeas corpus* cases under 28 U.S.C. § 2254. This court hereby substitutes Uchtman as the respondent. See Fed. R. Civ. P. 25(d)(1).

1

Taylor initially refused to identify the shooters, but did speak to police. The police, however, linked other physical evidence from the crimes to Smith — among other things, a gray Chevette peppered with bullet holes was spotted by other witnesses, was marked with temporary license plates identifying the car as belonging to Smith, and was found near the scenes of the crimes. Detectives obtained an arrest warrant for Smith on October 22, 1991, and he was arrested in Tennessee pursuant to that warrant on November 7, 1991. Two weeks later, Illinois officials (including state's attorneys, detectives who had investigated the case, and a court reporter) arrived at the jail where Smith was being held. After being interviewed, Smith gave a statement in which he confessed to the crime.

At trial, both Cruthard and Taylor testified against Smith. Cruthard admitted that he initially refused to identify Smith as one of the shooters because he did not like police and because he was fearful for his safety. Cruthard also admitted that the State's Attorney's office had agreed to recommend that he serve a sentence for a drug conviction in a particular facility in exchange for his testimony against Smith. Taylor also admitted during his testimony that he had not wanted to tell police who shot at him because he feared reprisal in connection with an on-going gang war. Other witnesses corroborated Cruthard's and Taylor's testimony, and at least one admitted that she was afraid to testify for fear of reprisal. The officers and state's attorneys testified as to the physical evidence they found that linked Smith to the crimes as well as the events surrounding Smith's extradition from Tennessee, interview, and confession. Smith's confession was also entered into evidence, over defense counsel's objection. Defense counsel argued that every fact in the confession had been known to the police and the state's attorneys before they traveled to Tennessee.

Smith took the stand to present his alibi and his testimony that his confession had been coerced. Smith testified that he had been living with his mother in Tennessee from July 2, 1991,

until the time of his arrest and that he had given the keys to a gray Chevette to his friends before he left. Smith also testified that he had been choked by Tennessee police when he was arrested, that he had had little to eat for two to three weeks prior to his extradition, and that he had been sleeping on a mattress on the floor in the Tennessee jail. Smith also testified when he denied knowing anything about the crimes to the Illinois detectives, they slapped him on the back of his head and face, and later, began punching him while he was cuffed. Smith testified that the officers stopped only when he agreed to cooperate, at which time, according to Smith, they told him that the beating would be worse in Chicago if he did not say what they wanted him to say. On cross-examination, state's attorneys showed Smith documents that demonstrated that he purchased the gray Chevette on July 24, 1991 — twenty-two days after he allegedly had left Chicago for Tennessee.

Smith's mother also testified that Smith had been living with her from late June or early July until his arrest. She also testified that she observed officers choking her son and that she was told by them if she told anyone what she saw, she would be arrested. As part of its rebuttal of Smith's allegations of police misconduct, the state introduced a stipulation that if called to testify a Cermak Health Services Intake Department employee would testify that he asked Smith upon his arrival at the Cook County Jail whether he had any injuries and that Smith denied having any injuries.

A jury found Smith guilty of the murders of Bussle, Archibald, and Coleman and guilty of attempted murder of Cruthard and Taylor. Although it found him eligible for the death penalty, it sentenced him to a term of imprisonment of natural life.

Smith appealed his conviction and sentence to the Illinois Appellate Court, raising six issues: 1) he was deprived of his right to cross-examine witnesses when the trial court limited his cross-examination of Assistant State's Attorney Burns' pre-existing knowledge of the facts contained in

3

Smith's written confession; 2) he was denied a fair trial because the state used improper tactics to show that the witnesses were afraid to implicate him; 3) he was denied a fair trial because the state attempted to impeach him with prior inconsistent testimony; 4) he was denied effective assistance of counsel because his counsel failed to object to improper testimony, cross-examination, and closing argument and also failed to raise these errors in a motion for a new trial; 5) he was denied a fair trial by the cumulative effect of the previously mentioned errors; and 6) the mittimus was not consistent with the judgment and thus must be corrected. The Illinois Appellate Court affirmed Smith's conviction and sentence and the Illinois Supreme Court denied leave to appeal.

Smith then filed a Petition for Post-Conviction Relief in the state trial court, raising nineteen issues, which need not be listed here. The state court dismissed the petition as frivolous and patently without merit. Smith appealed unsuccessfully to the Illinois Appellate Court. The Illinois Supreme Court denied leave to appeal, but directed the appellate court to reconsider its order in light of two cases. The Illinois Appellate Court did so and again affirmed the trial court's summary dismissal of Smith's petition for post-conviction relief.

Smith's *habeas corpus* petition raises twelve issues: 1) he was denied due process because he was convicted of a crime for which he was actually innocent; 2) he was denied due process because the police coerced his confession; 3) the state court erred in denying his motion to suppress his statement because the state failed to call sufficient witnesses to rebut his allegations; 4) the state court erred in limiting his cross-examination of Assistant State's Attorney Burns; 5) he was denied a fair trial because the state used improper tactics to demonstrate that witnesses were afraid to implicate him; 6) he was denied due process because the state failed to tender Cruthard's statements prior to trial; 7) he was denied a fair trial when the state attempted to impeach him with prior

inconsistent testimony; 8) the state failed to prove his guild beyond a reasonable doubt; 9) the court erred when it conducted bench trials of his co-defendants simultaneously with his jury trial after a severance had been granted; 10) trial counsel was ineffective; 11) he was denied a fair trial by the cumulative effect of the previous error; and 12) appellate counsel was ineffective.

Smith's first claim — that he is actually innocent of the crimes for which he was convicted — is not a cognizable *habeas corpus* claim. A claim of actual innocence is relevant to determining whether a petitioner may raise claims that may otherwise have been defaulted, but it is not cognizable in determining whether the writ should issue. *Milone v. Camp*, 22 F.3d 693, 699 (7th Cir. 1994). A claim of actual innocence provides "a gateway through which a *habeas* petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrerra v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 852, 862, 122 L.Ed. 2d 203 (1993). The Court need not liberally construe Smith's actual innocence argument as a fundamental miscarriage of justice claim to overcome his procedural defaults because Smith had not produced any evidence that he is actually innocent. Smith points to "thousands of pages of documents from the Chicago Police Department Office of Processional Standards" that show other complaints of excessive force lodged against the officers involved in his case. Such evidence may have increased the likelihood that a jury would have believed Smith and not the officers (regarding Smith's claim that his confession was coerced), but it does not prove that Smith was actually innocent, and is therefore insufficient to overcome any claims that Smith has procedurally defaulted. Further, it is not newly discovered evidence at all — Smith presented the same argument to the Illinois Appellate Court in his effort to convince the court that his confession was coerced.

In order to raise a constitutional challenge to a state court conviction and sentence in a federal *habeas corpus* proceeding, a petitioner seeking *habeas corpus* relieve must have fully and adequately presented his challenge to the state courts. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). A *habeas* petitioner's failure to pursue a discretionary appeal to the state's highest court, in this case the Illinois Supreme Court, constitutes procedural default barring federal *habeas corpus* review. *Id.* at 845; *Mahaffey v. Schomig,* 294 F.3d 907, 914-15 (7th Cir. 2002); *White v. Godinez,* 192 F.3d 607, 608 (7th Cir. 1999) (petitioner must pursue state post-conviction petition to State Supreme Court to preserve those claims). In other words, a *habeas corpus* petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel,* 526 U.S. at 845. A petitioner's claims are also procedurally defaulted where a state court relied upon an adequate and independent state procedural ground as the basis for its decision. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L. Ed. 2d 308 (1989); *Perry v. McCaughtry,* 308 F.3d 682, 690 (7th Cir. 2002).

Many of Smith's claims are procedurally defaulted. Although he raised the voluntariness of his statement in his post-conviction petition before the state court, the Illinois Appellate Court held that Smith had waived this claim by failing to raise it at trial or even on direct appeal. When a state court declines to review a claim not properly raised, the state court decision rests upon a state law ground that is both "'independent of the federal question and adequate to support the judgment.'" *Gomez v. Jaimet,* 350 F.3d 673, 677 (7th Cir. 2003) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Here, the state court expressly noted that Smith had waived his claim that his statement was coerced and went on to hold that Smith's

6

"newly discovered evidence" was insufficient to overcome that waiver. Consequently, he has procedurally defaulted this claim.

The Illinois Appellate Court also held that Smith waived his claims that the circuit court erred in denying his motion to suppress because the state called insufficient witnesses to rebut his allegation that his confession was coerced, that the state failed to prove his guilt beyond a reasonable doubt, and that the circuit court erred when it conducted his jury trial simultaneously with his co-defendants' bench trials. In denying Smith's post-conviction petition, the Illinois Appellate Court noted that Smith could have raised each of these claims on direct appeal, but did not. Consequently he has procedurally defaulted these claims as well.

Smith did raise several of his claims on direct appeal, but the Illinois Appellate Court nonetheless found these claims to be waived as well. In Illinois, to preserve an issue for review, a defendant must raise the issue both at trial and in a post-trial motion. *People v. Enoch*, 122 Ill.2d 176, 186, 522 N.E.2d 1124 (1988). On direct review, the Illinois Appellate Court declined to review the following claims: that Smith was denied a fair trial because the state used improper tactics to demonstrate that witnesses were afraid to implicate him and that he was denied a fair trial when the state attempted to impeach him with his prior inconsistent testimony. Although the Illinois court engaged in a plain error analysis of these claims, that does not save Smith's claims from procedural default. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005); *Brooks v. Walls*, 279 F.3d 518, 523 (7th Cir.2002).

The Illinois Appellate Court declined to review two of Smith's claims on post-conviction review because he did not comply with the Illinois Post-Conviction Hearing Act. The Illinois Post-Conviction Hearing Act requires that allegations in the petition be supported by affidavit, records,

or other evidence. 725 ILCS 5/122-2; *see also People v. Rivera*, 198 Ill.2d 364 763 N.E.2d 306 (2002). The state appellate court described Smith's allegations as "blanket statements unsupported by proper documentation" and refused to address the merits of his claims that he was denied due process because the state failed to tender the statements of Cruthard prior to trial and that his appellate counsel was ineffective for failing to argue that he was denied a fair trial by the admission of perjured testimony. These claims are also procedurally defaulted. *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 242 (7th Cir. 2003). Further, the remaining sub-claims in Smith's ineffective assistance of appellate counsel are raised for the first time in his *habeas corpus* petition and thus are also procedurally defaulted.[2] *Kurzawa v. Jordan*, 146 F.3d 435, 441 (7th Cir. 1998).

A petitioner, however, can cure his procedural default by showing good cause for the default and actual prejudice resulting from the errors of which he claims or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thomson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *United States v. Frady*, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). In order to show "good cause" for a procedural default, the petitioner must show that an "external objective impediment" prevented him from succeeding with his claim or appeals. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). As noted earlier, Smith's claim of actual innocence is insufficient to overcome his procedural default, and Smith makes no other argument that his procedural default can be cured.

---

[2] For similar reasons, the majority of Smith's "cumulative effects" claim is procedurally defaulted. Smith raises the majority of his "cumulative effects" claim for the first time in this *habeas corpus* petition. Those "cumulative effects" claims that Smith did raise before the state courts were found by the state court to have been waived.

This leaves Smith with two claims that he has not procedurally defaulted: 1) his claim that trial counsel rendered ineffective assistance by failing to object to improper testimony, cross-examination and closing argument, by failing to object to the state's attempt to impeach him, and by failing to preserve these errors in a motion for a new trial; and 2) his claim that the trial court violated his Sixth Amendment right to confrontation by limiting his counsel's cross-examination of Assistant State's Attorney Burns. Smith filed his petition for federal *habeas corpus* relief in 2002, therefore it is governed by the standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). Under AEDPA, a petitioner is not entitled to a writ of *habeas corpus* unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" by the Supreme Court. *Id.* at 405-06. A state court's decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule form the [Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. In order for a state court decision to be considered unreasonable under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

Smith argues that his trial counsel rendered ineffective assistance by failing to raise various objections and by failing to preserve these objections. *Strickland v. Washington*, 466 U.S. 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets forth the proper standard of review for ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show both that: (1) his attorney's performance was ineffective; and (2) he was prejudiced as a result. *Strickland*, v 466 U.S. at 688, 694, 104 S.Ct. 2052. The reviewing court must determine if the attorney's actions were within the range of professional competence demanded of attorneys in criminal cases, *id.* at 687, or part of sound trial strategy. *Id.* at 689. Under the second prong, a defendant's case is prejudiced when there is a reasonable probability that if not for the attorney's ineffective performance, the result in the case would be different. *Id.* at 694. In order to demonstrate the prejudice prong, the defendant must show that counsel's errors had more than "some conceivable effect on the outcome of the proceeding." *Id..* at 693. The defendant must show counsel's unprofessional errors rendered the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842-43, 122 L.Ed.2d 180 (1993).

The Illinois Appellate Court applied the test set forth in *Strickland*, and concluded, with very little explanation, that Smith had not been prejudiced by any errors trial counsel may have made. Although the Illinois Appellate Court could have laid out its reasoning in more detail, this Court cannot say that its application of *Strickland* was unreasonable. The evidence against Smith was overwhelming, and it was not unreasonable for the state court to conclude that the result of Smith's trial would have been the same even had counsel successfully raised the objections noted by Smith. *See, e.g., Roche v. Davis*, 291 F.3d 473, 484 (7th Cir. 2002) (failure to object to the jury's observation of defendant in shackles did not prejudice defendant where evidence of guilt, including

a confession, was overwhelming); *Pisciotti v. Washington*, 143 F.3d 296, 301 (7th Cir. 2001) (failure to object to improper comments from prosecutor did not prejudice defendant where evidence of guilt, including eyewitness testimony linking defendant to crime and confession that defendant had claimed was coerced, was overwhelming). Here, several witnesses identified him as a participant in the shooting. Additional witnesses also identified a car involved in the shooting and that car, which was registered to Smith and was later found with bullet holes in it. In addition, Smith confessed to the crimes and his confession was admitted despite his argument that it had been coerced. Finally, Smith's alibi that he was in Tennessee at the times of the crime was shown to be categorically false — documents from the Illinois Secretary of State demonstrated that he had purchased the car involved in the shooting on a date that he claimed to have been in Tennessee. Given the overwhelming evidence of Smith's guilt, it was not unreasonable for the state appellate court to conclude that any errors by trial counsel did not cause the jury to reach a verdict of guilty when otherwise it might have reached a verdict of not guilty.

Finally, Smith argues that his Sixth Amendment right to confrontation was violated when violated when the state trial court limited his cross-examination of Assistant State's Attorney Burns. "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985); *see also United States v. Swanquist*, 161 F.3d 1064, 1073-74 (7th Cir.1998) and *United States v. Vest*, 116 F.3d 1179, 1187-88 (7th Cir.1997) (discussing limitations properly placed on cross-examination). If the defense is given an opportunity to expose "a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination."

*United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998). Mere restrictions on the scope of cross-examination do not necessarily constitute a constitutional error in violation of the Confrontation Clause. *Delaware v. Van Arsdall*, 475 U.S. 673, 682, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

The Illinois Appellate Court noted two reasons why the state trial court's restriction on Smith's cross-examination of Assistant State's Attorney Burns was proper: 1) the testimony Smith wished to elicit was repetitive; and 2) the testimony Smith wished to elicit was beyond the scope of the state's direct examination of Burns. The state appellate court found that on cross-examination Smith obtained Burns' admission that he had knowledge of the facts of the case when he went to Tennessee and that two police investigators had briefed him on their investigation. The state appellate court also found that the two police investigators testified about their knowledge of the facts of the case. The state appellate court reasoned that the previously elicited testimony was sufficient to allow a jury to determine whether Burns was aware of the facts contained in Smith's confession prior to his interrogation of Smith and therefore to allow Smith to ask Burns about each and every fact contained in his confession would have been repetitive. Further, the state appellate court held that the state's direct examination of Burns was limited to questions necessary to introduce Smith's confession into evidence through Burns. Therefore, the state court held that questions concerning Burns' knowledge of the facts of the statement were beyond the scope of direct examination. The state appellate court noted that the proper inquiry would have been whether Burns provided defendant with the facts contained in the statement — which would have allowed the jury to assess Burns' credibility. The state appellate court's decision is not an contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

Smith has procedurally defaulted all of his claims but two, and those two claims do not warrant *habeas corpus* relief. His petition is therefore DENIED.

IT IS SO ORDERED.

7/22/05
Dated

The Honorable William J. Hibbler
United States District Court